William L. Arnett v. Commissioner.
Arnett v. Commissioner
Docket No. 29348.
United States Tax Court
1951 Tax Ct. Memo LEXIS 197; 10 T.C.M. (CCH) 550; T.C.M. (RIA) 51171; June 13, 1951
*197 Where taxpayer made a loan to another individual for use in his business and as a condition to the loan taxpayer required that 30 per cent of the profits of the business were to be paid over to two named charitable institutions, held, respondent did not err in including such profits in taxpayer's taxable income. Albert B. Arbaugh, Esq., 1200 Harter Bk. Bldg., Canton, O., for the petitioner. Lyman G. Friedman, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion Respondent determined a deficiency in petitioner's income tax for the year 1944 in the amount of $4,891.94 consequent on the addition to petitioner's gross income of the sum of $12,509.09, which amount was actually paid to two charitable organizations. Most of the facts were stipulated. Findings of Fact One Todd Tibbals, on February 10, 1943, wrote to petitioner requesting a loan of $20,000 for use in a business known as Wood Box Association and which business was operated by Tibbals as a sole proprietorship. The letter read as follows: "Feb. 10 - 43 "W. L. Arnett 83 S. High St. "Dear Sir, I need $20000.00 to carry on my business, and if you will loan me this amount, *198 I will pay you or to whom you may name 30% of the profit of my business, Wood Box Assn. This arrangement to run not less than six months nor more than one year. (Signed) Todd Tibbals" Petitioner Arnett wrote Tibbals on the same date agreeing to make the loan of $20,000 on terms as appears in the following letter: "Todd Tibballs [Tibbals] Wood Box Ass'n "I have decided to accept your proposition which is as follows: I will loan you $20000.00 for a period not less than six months and not more than twelve months for 30% of the profits of the Wood Box Ass'n of which you are the sole owner. Checks for the 30% to be made to the Westminister Foundation of Ohio and Ohio Masonic Home equally. The above loan to be evidenced by a promisory [promissory] note. (Signed) W. L. Arnett "Accepted this 10th day of Feb. 1943 (Signed) Todd Tibbals" Petitioner thereupon made the loan to Tibbals, who executed and delivered his promissory note for $20,000 to petitioner. The note was a cognovit note due one year after date and carrying interest at 5 per cent "from maturity." The note was not paid at maturity but was renewed by the execution and delivery of a new note in which the principal *199 sum was $20,516.67 (principal and unpaid interest) and carried interest at 6 per cent. This note was ultimately paid to petitioner with interest, the last payment being made on June 4, 1945. The business operations of Wood Box Association produced sufficient profits so that 30 per cent of such profits for the year 1944 equaled the sum of $12,509.09. During the year 1944 there was paid by Tibbals to Westminster Foundation of Ohio and Ohio Masonic Home in equal shares the aggregate sum of $12,509.09, representing 30 per cent of the profits of the Wood Box Association. Westminster Foundation of Ohio is an incorporated religious corporation and the Ohio Masonic Home is an incorporated charitable organization, both of such organizations having been approved by the Commissioner of Internal Revenue as entitled to exemption from income taxes. Contributions to each of said organizations are allowable deductions to donors in computing income tax of such donors. Petitioner at no time had any connection with, or ownership of, Wood Box Association. At the time the loan was made there were no profits of the business and most of the profits during 1944 came from contracts not in existence *200 when the loan was made. Petitioner did not include the sum of $12,509.09 as income in his income tax return for the calendar year 1944 nor did he claim any deduction in his return for that year on account of the payments made to the two institutions. Respondent held that the amounts paid by Tibbals to these institutions constituted income to petitioner and accordingly added the sum to petitioner's taxable income for 1944 allowing him the statutory deduction of 15 per cent on account of the gifts. Opinion VAN FOSSAN, Judge: The present problem had its genesis in the need of Tibbals for ready cash in his business operation conducted in the name of Wood Box Association, a sole proprietorship owned and operated by Tibbals. On February 10, 1943, Tibbals, having failed to obtain a loan from the Huntington National Bank in Columbus, Ohio, wrote petitioner the letter of February 10, 1943, set out in our findings. The parties had had previous business dealings. Tibbals testified that he first mentioned the 30 per cent figure set out in this letter. Be that as it may, the language used in the letter, i.e., "* * * I will pay you or to whom you may name 30% of the profit of my business, *201 * * *", would seem to suggest that this unique arrangement had been discussed or used previously. The idea of paying part of the profits to petitioner's nominee obviously was advanced by petitioner. We cannot but observe that as appears, beyond any possible question, from an inspection of the photostatic copies of the letters attached to the stipulation, petitioner Arnett wrote the Tibbals letter in his own hand and on his stationery while Tibbals merely signed the same. The second letter, bearing petitioner's signature and closing the agreement, was also on petitioner's stationery and was all written by petitioner in his own handwriting, including the phrase "Accepted this 10th day of Feb. 1943", which was followed by the signature of Tibbals. The cognovit note mentioned by petitioner in the second letter was in the amount of $20,000 and was also executed February 10, 1943. It bore interest at the rate of 5 per cent after maturity. The renewal cognovit note, dated August 15, 1944, had a principal sum of $20,516.67 ($20,000 principal and unpaid interest), provided for repayments beginning October 15, 1944, at the rate of $2,000 per month and carried 6 per cent interest. The total *202 principal and interest, in the aggregate sum of $21,399.71, was ultimately paid in full to petitioner, the last payment being on June 4, 1945. Since the note carried interest, it is clear to us that the 30 per cent of profits was in the nature of a bonus for the making of the loan, which the bank had refused. This additional payment was a large part of the consideration flowing to petitioner and undoubtedly was the source of petitioner's chief satisfaction in the transaction. Petitioner was clearly interested in the success of the two charities to which the payments were made. Tibbals was interested solely in the success of the Wood Box Association. It will be noted that petitioner did not assign the contract or the notes to the charities, - he directed that the 30 per cent of profits to be received for making the loan should be paid to them as the profits were earned. The charities had no vested property rights in anything herein involved. No consideration moved from them to petitioner. They were merely petitioner's nominees to receive payments of the profits. We entertain no doubt that petitioner could have changed his designation of the recipients of his bounty, had he desired *203 so to do, either by a simple directive to Tibbals or by appropriate legal action to re-form the contract. In our opinion, petitioner's contentions run counter to long established principles announced by the Supreme Court, - to the net effect that a taxpayer cannot avoid payment of taxes on income earned by him by the expedient of assigning such income to another. See ; ; ; ; . In the last cited case the Supreme Court said: "* * * The crucial question remains whether the assignor retains sufficient power and control over the assigned property or over receipt of the income to make it reasonable to treat him as the recipient of the income for tax purposes. * * *" The Court further observed: "* * * Moreover, the Horst case [ recognizes that the assigner may realize income if he controls the disposition of that which he could have received himself and diverts payment from himself to the assignee as a means of procuring the satisfaction *204 of his wants, the receipt of income by the assignee merely being the fruition of the assignor's economic gain. "In Harrison v. Schaffner, supra, 312 U.S. at page 582, 61 S. Ct. at page 761, 85 L. Ed. 1055, it was again emphasized that 'one vested with the right to receive income did not escape the tax by any kind of anticipatory arrangement, however skillfully devised, by which he procures payment of it to another, since, by the exercise of his power to command the income, he enjoys the benefit of the income on which the tax is laid." * * *" In the present case the 30 per cent of the profits, when earned, first belonged to petitioner as part of the consideration for lending the funds to Tibbals. The designation of the charities as nominees to receive the distribution of profits does not obscure the real party in interest, the party who is to derive the satisfaction that flows from the donation. The question is, who owned the income as earned. To us it is clear that before the 30 per cent went to the charities, it passed, in the eyes of the taxing statute, through the hands of petitioner. His ownership was not a legal fiction. His was the real ownership. His was the *205 real satisfaction of making the contribution to the charities. Therefore, his was the tax burden. The respondent has held that the petitioner is subject to tax on the funds as income earned and that he is entitled to the standard deduction of 15 per cent because of the distribution to the charities. Looking at the realities of the situation, we think respondent correctly so held. "It is the statute which taxes the income to the donor although paid to his donee. * * *" It is our judgment that the 30 per cent of the profits paid to the charities here involved was properly included by respondent in petitioner's gross income. Decision will be entered for the respondent.